Travelers Good morning. May it please the Court, Paul Hilding for Plaintiffs and Appellants, Paper Recovery, Paper Recovery Entities. Just very briefly on the facts, this case is a little different from most insurance defense, duty to defend type cases because of the fact that the claim was submitted to the insurance company prior to a lawsuit being filed. So the insurance investigator came out and questioned the client about what had happened without having a pleading in front of him. The full text of that discussion is set forth by the appellees at pages 3 and 4 of the brief. And in that conversation between the investigator and my clients, the discussion was about what it was that Havas Interactive, the underlying plaintiff, claimed that Paper Recovery had done wrong. There's discussion about an employee of Paper Recovery possibly selling Havas's software products without permission. I want to ask, Mr. Hilding, what advertising was there? The advertising, the allegation of the complaint simply said that the advertising occurred. Well, I know that. But what advertising was there? The California Supreme Court says that that word, advertise, is to be interpreted as meaning widespread promotional activity. Right. That is the allegation. My question, what is the widespread promotional activity that underlies the claim? My client denied that there was any advertising, denied that he did anything wrong. And the point is, under the duty to defend analysis, as set forth in Gray v. Urick, the question is, if the plaintiff, if Havas had proved the truth of its pleadings, that there was, in fact, advertising, then my client would be entitled to coverage. Sure. But the insurer may and should go beyond the bare-bones allegation of the complaint and do some investigating. That's right. So my question is, what is there, aside from the use of the word advertising in the complaint, that would suggest any potential recovery for any advertising activity? The California Supreme Court said that the use of the word advertises establishes the potential of coverage. It is the insurance company's responsibility to then rule out that possibility. I don't mean it that way. That's fine. Even if that's right, my question is still the same. I mean, I understand what your legal position is, but what activity is it that you say is potentially advertising? We deny any activity occurred. Well, I know, but you've got to have something to point to that is potentially advertising in order to get insurance coverage. Somebody stole software from these trucks. Advertising. We don't know who stole the software. We don't know who did it. Havas alleged it was advertised. We can't prove it. We're not obligated to. The insurance company has the duty to undertake an investigation. It took no – it did not investigate this claim after the lawsuit was filed. Well, and the point is that it's advertising injury and it's copyright infringement in connection with advertising. Okay? So I suppose the copyright infringement comes from the fact that somebody used the software? It could have been a billboard saying by – It could have been, but was there? We don't know. It's the insurance company's burden. We only have to establish the possibility that advertising occurred. That is – that was specifically alleged. What possibility is there? That's all I'm trying to ask you, is if I came to you as an insurance company – There may have been no possibility. Let me just ask you what answer you would give me if I said what possibility is there that there was any advertising activity? What answer would you give me? I would say I don't know. I didn't do anything wrong. Okay. So I can't answer the question. It's as if in an auto liability case, you're only covered for liability arising out of use of your auto, and you say I wasn't in the auto. I was in Europe. Here's a picture of me in front of the Eiffel Tower with my car. I would say there's no possibility of coverage then. And, however, the insurance company has to defend because the allegation, even if groundless, false and fraudulent, must be defended. If the plaintiff were able to prove the truth of those allegations, there would be coverage under the policy. So if the plaintiff here, making this outlandish and ridiculous allegation against my client that he advertised their copyright, succeeded in doing so, succeeded in improving that at trial, we would have been entitled to coverage. The fact that it was groundless – I'm sorry. Oh, you go finish. I didn't mean to interrupt. The fact that it was groundless does not relieve the insurance company of their duty to defend. That has been the law in California for 40 years. Okay. The heart of the relationship between Havas and Paper Recovery was Havas said here's discarded and returned software and packaging. Dispose of it, right? Right. And Paper Recovery's job was to take out any printed material, tear up the CDs or have them shredded or whatever. And otherwise, that was the nature of it. And the allegation was, and apparently there were some facts to support this, that an employee of Paper Recovery was taking this product and selling it and making money off it, right? No facts. That is what was told to the insurance company. I believe the allegation is correct, Your Honor. But the direct relationship between Havas and Paper Recovery was for what I just described, right? True. Why doesn't the breach of contract exclusion apply? It's entirely possible that this truckload of software never arrived. And so, again, there's an allegation of breach of contract. And under Gray v. Zurich, until the case goes to trial and a finding of breach has been established, it's possible that no breach of contract occurred. It's possible that no contract existed. My client denied in his declaration that there was a contract, that what existed here Now, there may not have been an overall long lawyer-written contract, but there were invoices and delivery slips and that sort of thing, which established the working relationship. Established an implied contract. I mean, the relationship wasn't that Paper Recovery told Havas, look, we're going to take this product, and if we like it, you know, we might give it to one of our employees to sell. We're not going to dispose of it as you want. There would have never been a relationship, right? Right. But there's also an exception to that exclusion. And it's interesting that Travis cited a brand-new case out of the Fifth Circuit out of Texas. There's an exception to the exclusion for liability arising out of breach of contract for where the liability arises under an implied contract. And so the question is, do we have an express contract here, a well-documented relationship between the parties where everybody signs their name, or do we have an implied contract? And the court of appeal in the Fifth Circuit found that that language, implied contract, was unclear. That was their feeling about it. I'm not sure what Travis meant by implied contract, but this certainly doesn't seem to me like an express contract relationship. What you have is a course of dealing over a period of time documented not by a single document, but by bills of lading, invoices, receipts, and so forth. And Travis has not produced a single piece of paper that says thou shalt do this or that in terms of destroying the software. It was in all likelihood implied in that relationship. And then for that reason, it would fall within the exception to the exclusion. Again, I'm looking at paragraph 15 of the complaint. It's at ER-262. Pursuant to the agreement between Paper Recovery and Havas, blah, blah, blah, blah, blah. That's an allegation. It's not necessarily true. I mean, that's an allegation that may or may not have been proved at trial. My client, again, denied in the declaration. First of all, there are four or five Paper Recovery entities that got sued. How many of them were parties to this contract? So I understand your position. The allegation in the complaint that there was advertising required travelers to accept that and defend. Exactly. Until they could prove. But the allegation in the complaint that said there was an agreement and a breach of that agreement should be disregarded. No. Until it was proved that there was a breach, Travelers was on the hook. At such time as they took the deposition, for example, of Mr. Galt and he said, absolutely, I agree, I breach the contract. At that point, he was entitled to withdraw from the defense. But it's Travelers' own. Travelers has made the case law on this. Travelers filed a lawsuit against INA. And in that lawsuit, which we cited to you, the point is that Travelers argued and argued successfully that the insurance company can't justify its denial of a defense with information obtained later on. So every time Travelers. The Texas case you're talking about. No, no. I'm sorry. This is Travelers v. INA. And that's a California Southern District Court of the Southern District, a decision by Judge Brewster in the Southern District. And Travelers argued down there that you cannot justify, in trying to get a contribution from another insurance company, they said to INA, you cannot justify your decision to deny coverage by information you obtained after you denied the duty to defend. And in this case, what Travelers is doing is just the opposite. They are citing deposition testimony. They're citing discovery responses. They're citing responses to requests for admissions that happened way after they denied coverage. Those – that evidence occurred in this lawsuit. And my point is they had to have the evidence in that lawsuit. They had to have the evidence that there was a contract and that there was a breach of a contract and so forth. At the time they made the decision to deny coverage, Travelers made the law on that issue. And I'll reserve some minutes to respond. Mr. Clement, before you go, can I ask one question? In paragraph 19 is the paragraph that contains the word advertise. If that word had been omitted from paragraph 19, would that change your case? Yes. No coverage. No duty to defend. So if we take out the word advertise, which is listed in series with distribute, sell, and offer for sale, then you don't have a case. Absolutely. And again, the California Supreme Court has been very clear. The bare possibility of a covered claim requires the insurance company to defend. And the Court – and the same Supreme Court has said the insurance – the courts have been very solicitous of the insurer's right to a defense. The insurance company has to do an investigation and find out what did – what did have us mean when they said we advertise. They failed to conduct that investigation. The reason they did was they didn't even have the complaint in front of them when they denied coverage. It wasn't on anybody's radar screen. After the complaint came in, there was no investigation. There's nothing in the record. So the paper – To rule out – to figure out what was meant by this word. Paper recovery was aware of the potential for this claim before the lawsuit was filed. Is that correct? Absolutely. Did paper recovery share with Havas what its coverage was prior to litigation? Not to my knowledge. In fact, the original complaint does not even contain the allegation of copyright infringement, which is the basis for our belief that there's coverage for this claim. There was an amended complaint. There was an amended complaint. Did the word advertise appear in the original complaint? Yes. But it was not in – what's so clear here, what makes this, to me, beyond dispute, a covered claim, is the fact that it says in advertising the paper recovery infringed the copyright. There's a clear causal nexus. The word advertise is in there. Every case that has said there's no evidence of advertising and has denied the – that there's a defense obligation, that word was not included. And LABAS, L-E-B-A-S, is the decision that's closest to us on this. In that case, all that happened was a bail, a bare assertion of the fact that there was advertising. Was the policy produced in discovery prior to the amendment? I doubt. I – no. Do you know? No, I don't. I don't know that, but I doubt it. The denial of coverage didn't happen until months after the First Amendment complaint was filed. And Travelers was invited to the mediation, the settlement conference, and they chose not to attend. So if the Court is suggesting that there was something – No, no. I just – I just asked. I'm not suggesting anything. Turn your antennas down. Okay. Sorry. I wasn't clear what the purpose was. I'll reserve for rebuttal. Thank you. Sometimes we ask just to find out. Mr. Holden. Thank you. Good morning, Your Honors. Counsel has made a lot of the fact that Travelers did not go out and do an additional factual investigation after the complaint was filed. But that's because Travelers had already done a factual investigation before the complaint was filed. They knew what this claim was about. They had already learned that the claim was about HVASA's claim that somebody at Paper Recovery, and they identified a particular employee they thought it was, was diverting the software and selling it to individuals or to unlicensed retailers. That's what they knew the claim was about already. There was no need to go out and do additional investigation. Based on that, and knowing that the allegation was that an individual employee at the company was diverting the software, it's completely inconsistent with any possibility that there was advertising by the company. Well, because they didn't do that investigation, they had no idea whether the employee who was distributing this information, this product that was supposed to be disposed of, was advertising or not. Well, they did do an investigation into, tried to find out what the employee was doing, tried to talk to the people that supposedly had bought the product from a recycler. At the time paragraph 19 appeared in the amended complaint, did or did not travelers know whether advertising had occurred in connection with these events? At the time that the amended complaint came in with that allegation, travelers knew that the allegation was that an individual employee had been diverting this. Did they know whether or not that employee had engaged in advertising in connection with his illicit sales efforts? They had no reason to believe that he had. There was no allegation that he had. Well, it's in 19. Well, the bare word advertised is in 19, along with marketed, distributed, sold a whole list of things. They knew. Let's see what they knew. They knew that Havas had given paper recovery, your insured materials, that were supposed to be disposed of. Yes. And second, that some of those materials, in fact, were not disposed of. Yes. They were taken and put in the open market and sold for a profit. That was the allegation. That had apparently been done by an employee of paper recovery. Yes. Did travelers know whether this employee was acting or not acting on behalf of paper recovery? I don't believe they knew one way or the other. Okay. So they didn't know, and the fair assumption of the allegation of the complaint is that they did. They did have the company's denial that if he was doing that, he was acting on behalf of the company. But they're looking at a complaint which said that they did. Doesn't it make sense that if an employee is taking product like this and selling it to the public that he or she would advertise in some way? No. Why? Because what the employee allegedly was doing was taking it to recyclers. It was a recycler that had ultimately sold the product to the people who allegedly bought it. But you didn't know whether it was being advertised in connection with those sales or not, whether an ad was put in a local paper, in flyers, in handouts, or anything of the type. You just didn't know that, did you? There was no evidence of that. They couldn't go out and prove that that had been done. How about a yes or no? You didn't know that. Isn't that correct? They couldn't prove it. Okay. So what you had in front of you was an allegation of the complaint that all of this had occurred and that it had been advertised, correct? The word advertised was in there along with a whole host of other words. Why under California law didn't that put you under a duty to investigate and defend and at least find out whether advertising had in fact occurred? Because they had already done the investigation to understand what the alleged facts were. And that's what they need to know. Talk about the investigation. Did you ever interview the people who actually did this? They couldn't find the people. Okay. So you don't know what they did. Well, they know what the allegation was. The allegation was not that they went out and advertised it or that there was any harm from the advertising. The allegation was there was harm from the sales and that it was this individual employee who was selling the product. In paragraph 19 of the complaint it says they advertised in connection with these efforts, and you didn't know that up, down, or sideways, did you? Simply throwing in the word advertising in a long list of words similar to that is the essence of a boilerplate allegation. That's why people get insurance, isn't it? So if somebody files a complaint and it says you did X, even if you didn't do it or there's no way on earth you could have done it, the insurance company has to come in at least to investigate and defend to get that off the table. If they allege they did something that was covered, even though they say, no, we didn't do that, if they allege they did something that was covered, that would be covered, then they have a duty to defend. The allegation here is that they were selling product and the facts. Advertising. Well, the word advertising is in there, but that doesn't determine that it met the policy definition of advertising. The policy definition of advertising, as the Supreme Court of California has interpreted, means widespread distribution of promotional material. And you had no idea whether it was spread or widespread or anything in between? There was no allegation that it was, none whatsoever. And, in fact, the facts that travelers did know were completely inconsistent with widespread distribution of promotional material. I mean, if this person is diverting the software that he doesn't have any right to and is going and selling it, knowing that he doesn't have any right to sell it and is selling it to recyclers who are not licensed by the owner of the product, it doesn't make any sense that he's going to go out and distribute promotional material in a widespread manner, advertising the fact that he's doing this. And so the product were a CD for Windows XP and paper recovery had been hired to dispose, properly dispose of that product. And an employee had taken it out and sold it on the open market and advertised in papers. I suspect Mr. Gates would be upset about that and would feel that it had, that this illegitimate, improper, probably defective product was being marketed to people under the name of Windows. And when he went to the company and said, we have a problem because this is going on, he would have said, we have a problem because you're advertising this product. Instead, what they did is they came to paper recovery and said, we have a problem because this employee is, we believe, selling this product. They didn't say anything about having any indication that there was advertising. All they knew was that a couple of people had bought this product from a recycler and they thought that it was this particular employee of paper recovery who was diverting it to the recycler. Nothing about any advertising. Except what's in the complaint. And so then this complaint shows up. Let me get the paragraph in the complaint that we're talking about. Plaintiffs are informed and believe that in competition with plaintiffs, the paper recovery defendants advertise, promote, distribute, sell, and offer for sale in this district plaintiff's software under the marks, et cetera, et cetera. Then they go on and allege that defendants sell the software intending to exploit plaintiff's goodwill. The word advertising there, I mean, that is a boilerplate assertion designed to say that they are in some manner capitalizing on the marks. They don't know what manner. So if I have an automobile policy from Travelers and it covers permissive users and I leave my car at home in Phoenix while I'm here in San Francisco and a neighbor kid finds the key and goes out and drives the car and gets in an accident and there's a lawsuit and the plaintiff comes against me and I say, look, I didn't give anybody permission to use my car. Travelers would have no duty to defend that lawsuit. In that case, if the entire liability is hindering on whether it was permissive or not and that's an issue in the case, I think they would have a duty to defend it. In this case they'd have to go out and investigate whether it was permissive use or not. Well, I think they would have to defend it even if they found out that it wasn't. If it turned out I'd left that key at the neighbor's house and told them to start the car periodically to make sure the battery was charged, maybe drive it around the block, but you'd have to investigate. I'm not an expert on permissive use. You'd have to investigate that, wouldn't you? Yes. They would have to know what had happened there. My last question. Was there any investigation whatsoever to determine whether this product had been advertised in connection with its sale? Not beyond what had been done before the complaint was filed. Okay. And the other point I wanted to make about that was that in this case the word advertising, there were no factual allegations of advertising. There was just the word advertised thrown into the complaint in this laundry list of things that they were saying might have been done with it. In the Swain case, a boilerplate allegation of negligence that is not consistent with the actual facts alleged was held not to support a duty to defend. In this case we have a laundry list of things that are not consistent with the actual facts as travelers knew them. Mr. Holden, in there you also have the words in paragraph 19, promote, distribute, sell, and offer for sale. Don't the words promote and offer for sale come perilously close to advertising? Not under the Hamid case. The California Supreme Court, which requires widespread distribution of promotional material to the public at large. You can promote something in an individual one-on-one solicitation. You can offer for sale, obviously, in a one-on-one solicitation. Those clearly are not advertising. The fact that they stuck the word advertising here doesn't mean that they were referring to widespread distribution of promotional material. And, in fact, in looking at the actual facts that travelers knew from having done the investigation before the lawsuit was filed, there wasn't any widespread distribution of promotional material involved or alleged. And so the insured was saying there wasn't any. The claimant was not claiming there was any. And there was absolutely no basis to believe that this claim had anything to do with widespread distribution of promotional material. That was what, when we were litigating this in the trial court, I understood to be the main issue in the case was whether widespread distribution of promotional material was required or if this individual employee going to a recycler and offering this for sale would constitute advertising. Since then, the California Supreme Court has resolved that issue and made it quite clear that it does have to be widespread distribution of promotional material, and there simply was never any evidence or allegation of anything like that in this case. Mr. Holden, if it were evident that the employee who was accused of stealing the software off the truck and selling it out of his house or wherever, if it were clear that the employee had advertised this for sale, took out a small ad in a local paper or put out handbills or something else that would constitute that widespread promotional activity, would travelers then have a duty to defend this suit? I think if it were clear that that was true, they would. I think if Havas had... Even if it was unauthorized advertising by a rogue employee, so if all of this was done, he's going down to Kinko's, he's running it off down there and then putting handbills around his neighborhood, and Havas hasn't authorized this and they're not aware of it, does travelers have a duty to defend that suit? I suppose it would depend on what the basis of the allegation against paper recovery was that if it was alleged that they had authorized it, I mean here we're getting into speculation obviously, but if it's alleged that they had authorized it and did know that he was doing this advertising, then perhaps there would. So if we had another paragraph in here, paragraph 19A or 18A or something that said even if this was a rogue employee, Havas authorized it, and then we have paragraph 19 that says advertised, would that then be sufficient to trigger... Well, there would have to be some indication that the employee had advertised. Well, that would be... That all goes to the truth of the allegations, but we now have allegations which somebody is going to have to defend. It's either going to be Havas or it's going to be travelers on behalf of Havas. Well, the stray word advertised does not give rise to a duty to defend. The stray word advertised is a boilerplate allegation along with the rest of that laundry list of things. And what you look at in a complaint is... If they said Havas advertised, I'm sorry, if we said paper recovery advertised Havas' products for sale, would that then trigger travelers' duty to defend? If they made some factual allegations that paper recovery was advertising the products... This is Federal court. This is notice pleading. This is not securities fraud or any other narrow corner of the law where these absolute specific allegations are required. This is Federal court. But when... You took my product, you made unauthorized use of it, you advertised it. I want damages. But when there's a generic boilerplate pleading like that, the insurer is entitled to look beyond the pleadings to the facts. What makes the word boilerplate? If the complaint says steel, is that boilerplate? It's a case-by-case basis. In this case... Is the word unauthorized boilerplate? In this case, as I say, it's a case-by-case basis. In this case, the paragraph that contains the word advertised is just a laundry list of things that someone might do with products. How about the word agreement? Is that boilerplate? That's not the kind of boilerplate allegation that shows up in a complaint when you're saying I've done this, that, or the other thing with the product. That's a boilerplate you like. Well, no, I don't think it's boilerplate. I understand where you're getting at. I disagree. I think there's a distinction because in that case they're not listing a laundry list of things that the insurer might have done. So when the complaint uses a single word that might provide a basis for applying an exclusion, that's not boilerplate. But when it uses a single word that might trigger coverage for a duty to defend, that is boilerplate. Is that your argument? No. They were making a specific allegation when they said that pursuant to an agreement. There was no need to have that in there for their trademark or copyright claim. They said pursuant to an agreement, they did this, that, and the other. And that's not the kind of boilerplate that you see in every single trademark or copyright complaint, whether there was actually advertising or not. The later one that lists advertised, distributed, sold, offered for sale, that is the kind of boilerplate that is in every single complaint, I believe, that's ever been filed for trademark or copyright infringement. It doesn't mean any advertising is the actual basis of the claim. And, in fact, when we look at the actual facts, both as travelers knew them at the time based on its investigation, and as they further developed later, which shows that travelers' understanding was correct, there was no advertising. And Havas never claimed that there was advertising. What Havas claimed was that an employee had diverted it and sold it to a the hands of ultimate consumers. The breach of contract exclusion, it's important to recognize, applies whenever there is an incidental relationship between the breach of contract and the conduct. And in this case, I think it's undisputed that, in fact, there was at the very least an agreement between Havas and Paper Recovery. Certainly that was alleged in the complaint. It was something that travelers knew about before the complaint was filed, just as they knew about what Havas' claim was. They knew that Havas and Paper Recovery had an arrangement where Paper Recovery would get the product from Havas and destroy it, and it agreed not to sell it. And so when the complaint came out and alleged there was an agreement, that was not a surprise. That was exactly what they already knew. And part of that agreement, fundamental to that agreement, was that Paper Recovery would do what they promised to do. Exactly. And supervise their employees to ensure that it was done as they promised it would be done. And that they would make sure that exactly what they agreed to do would be done. And what they agreed to do was to destroy the products. Part of the reason, I assume, for Havas wanting to do this is to avoid exactly what happened. They don't want these products that they were unable to sell for whatever reason to get out into the market. They want them destroyed so they're gone forever. That's what they hired Paper Recovery to do. Your position is no even possibility of coverage, even if the president of Paper Recovery had taken out a full-page ad in the New York Times saying, authentic Havas software available at a super discount, call me at this 1-800 number. That's right, because that's a breach of the contract that Havas had with Paper Recovery. Now, counsel referred to the exception to the exclusion for misappropriation of advertising ideas under an implied contract. What that refers to is there's a line of cases in which someone has come up with an advertising idea, approached a company about it, and said, I've got this great idea for advertising your product. I think you ought to advertise. Well, the first case that I remember this coming up in was they went to a beer company and said, you ought to sell a line of beer for women. This was back in the 40s and 50s. The difference between taking out an ad in the New York Times that says I've got Black Market Budweiser beer for sale and taking out an ad that shows, you know, a mule wanting to be a Clydesdale? In terms of coverage, I don't think so. If it's an advertisement and it's infringing the trademark in the advertisement, if the content of the advertisement is infringing the trademark. If they use the word Budweiser, that's enough. In that case, I would say yes. But it does have to be the content of the advertisement, and that's something else that Hamid has made clear. It has to be the content of the ad, not simply the fact that they've advertised and then something was sold and that harmed them. It has to be the content of the advertisement itself. That was what the Hamid case said as well. And in this case, there's … Did the investigation produce any indication that there was any advertising content referred to the Habas product? Absolutely not. The investigation revealed that what Habas was claiming, they couldn't confirm whether it was true or not, what Habas was claiming was that an employee was going out and selling the product. Nothing about advertising it, nothing about the content of any advertising causing any harm to Habas, simply the sale of the product contrary to the agreement that they had. Mr. Holden, if Habas had recovered against paper recovery in this suit, would the damages have been limited to contract damages? I don't believe they would have been limited to contract damages. It depends on the basis, of course, on which they recover. They had claims both for breach of contract and trademark infringement, copyright infringement. If they had been able to establish the elements of trademark infringement or copyright infringement and recover on that basis, it would not have been limited to contract damages. Do travelers have a duty to defend a trademark copyright infringement suit? If it's in the course of advertising for copyright infringement, yes. For trademark infringement, that's an open question that has not been resolved in California. There's been some authority going both ways. But if it's related to a breach of contract, with even an incidental relationship to a breach of contract, then the breach of contract exclusion applies and there is no duty to defend the trademark infringement or copyright infringement claim. Absent the contract connection, copyright infringement in the course of advertising would be something that travelers would have to defend. In this case, no advertising and it was pursuant to a contract. So, thank you. Mr. Chauvin. First of all, I've been assured by trial counsel, Mr. Herron, that the policy, the insurance policy was not produced in discovery in the Havas case and there was no discovery, informal or formal, in that case. The case was settled. Also, I wanted to correct something by opposing counsel, the assertion that the material was sold to other recyclers, that the entire discussion or the entire statement of the investigators contained at pages 3 and 4 of the brief of travelers and verbatim it says the information that they were given, they being paper recovery, was that Havas was told by someone that an employee of our insurance sold their product. The product was allegedly sold out of Hayward. The employee in question is Dale Mullet and so forth. There's no discussion at all about whether or not advertising occurred, to whom the product was sold and so forth. So there is nothing in their brief, certainly, and I'm not aware of anything in the record that says that the product was turned around and sold to recyclers. It's entirely possible that there was some advertisement by this employee in some media that we're not aware of. It's also entirely possible that everything Havas said was false. None of this happened. Or it's possible that a trucking firm intercepted the material before it got to the recycling facility and some trucker sold it and advertised it. We don't know. And it's the duty and the responsibility of the insurance company to determine the answer to that question. Once it is done so conclusively, once it is conclusively established that no advertising occurred at that point in time and not before, at that point in time, they're relieved of the duty to defend. Regarding the lengthy discussion about boilerplate allegations, in the Swain case what we were dealing with was the legal conclusion of negligence. The word negligence was described as being boilerplate by the court of appeal. By the way, that's the only case I found in California that criticizes the complaint as containing boilerplate. The allegation of negligence was completely inconsistent with a lawsuit that was all about intentional conduct. And that's different from here where the allegation of advertising, first of all, is not a legal conclusion. It's a factual assertion, a very brief one, but it's an assertion of fact. And it's not at all inconsistent with a trademark or copyright infringement claim. I asked myself the question, this is, why are we being so restrictive here about the duty to defend? The rule the California Supreme Court has said is the benefit of the doubt, any doubt as to what happened here has to be given to the insured. At that point in time when the insurance company comes forward with conclusive evidence that no advertising existed, for example, by taking the deposition of the Havas people and saying, you allege this, where is it? Where's the proof of the advertising? At that point in time, they would be relieved of the duty to defend, but not before. Finally, on the breach of contract exclusion, I would, there were a total of five paper recovery entities. As to four of them, Mr. Galt denied in the declaration that there were any contracts at all between them and Havas. They were sued for trademark infringement, for copyright infringement. It is entirely possible that case could have gone to trial without them being found liable for breach of contract. Was there a contract at all regarding software? What is travelers' evidence of that? They cite discovery at page three of their brief. They cite discovery that was taken after, after they decided to deny coverage. Did the contract require the destruction of software?  And I think that takes us within the exception to the exclusion, which I've already discussed. Was the software ever delivered to paper recovery, the software that was allegedly infringed? If Havas is unable to prove that it actually delivered the software, then how can paper recovery be guilty of anything, breach of contract, advertising, anything? The insurance company has to defend the case until, until it proves, until there's proof that that happened. When is that proof going to come up? It's going to happen at the trial, at the trial between Havas and paper recovery, a trial that never happened because the largest, one of the largest producers of this type of software in the world was going after a client that was small and didn't have the kind of legal resources it needed to defend itself. Those resources would have been available for travelers had travelers fulfilled this obligation to defend. I would also, on the issue of the application of exclusion, refer the Court again to Justice Kroski's excellent discussion of that, the fact that an exclusion is to be very narrowly construed in the context of a duty to defend, and also to Gray v. Zurich, where, remember, the allegation there was that Dr. Gray willfully, maliciously, brutally, and intentionally assaulted the, the plaintiff, the underlying plaintiff, and the Court found that even with all of those adjectives, it was still possible, it was still possible that it was self-defense, and therefore the duty to defend continued all the way to trial. Here it is possible that there was no contract, that if there was, that there was no breach, that three or four of the, of the paper recovery entities were not even parties to that contract and so forth. Thank you, Your Honor. Thank you, Counsel. Both of you.  Thank you.
judges: Rymer, Hawkins, Bybee